## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**CHRISTINA A. BITONTI,**

               **Plaintiff,**              **CIVIL ACTION NO. 08-cv-12316**

       **vs.**                    **DISTRICT JUDGE BERNARD A. FRIEDMAN**

                              **MAGISTRATE JUDGE MONA K. MAJZOUB**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

               **Defendant.**
_____/

### REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**    Plaintiff's Motion for Summary Judgment (docket no. 9) should be DENIED, that of Defendant (docket no. 16) GRANTED, and the case DISMISSED.

***

**II.**    **PROCEDURAL HISTORY:**

        Plaintiff filed an application for disability and Disability Insurance Benefits on August 9, 2004, alleging that she had been disabled and unable to work since December 26, 2003 as a result of the removal of a brain tumor, sensory seizures, arteriovenous malformation and ankle deflection weakness.  (TR 85, 117, 126-27, 134).  The Social Security Administration denied benefits.  (TR 78-82).  A requested *de novo* hearing was held on May 31, 2007 before Administrative Law Judge Karen J. Goheen (ALJ).  (TR 56, 63, 411).  The administrative law judge subsequently found that the claimant had the residual functional capacity (RFC) to perform a limited range of unskilled sedentary work existing in the economy and was not entitled to a period of disability or Disability Insurance Benefits because she was not under a disability at any time from December 26, 2003 through the date of the November 14, 2007 decision.  (TR 63).  The Appeals Council twice denied

review of the ALJ's decision.  (TR 5-6, 44-47).  The parties filed Motions for Summary Judgment and the issues for review are whether Defendant's denial of benefits was supported by substantial evidence on the record and whether there is new and material evidence warranting remand.

### III.    PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

#### A.    Plaintiff's Testimony

Plaintiff was 48 years old at the time of the hearing.  (TR 416).  Plaintiff is a high school graduate with two years of college education.  (TR 132, 418).  Plaintiff attended a trade school for photography and has past work experience in doing sales and framing at a photo frames store and as a teacher's aide.  (TR 100, 108, 419, 421-22).  Plaintiff had surgery in December 2003 for removal of a benign brain tumor. (TR 131, 422-23).  Plaintiff has focal seizures from the brain tumor, which affect her right leg and hip.  (TR 424).  Plaintiff testified that the seizures prevent her from working.  (TR 427).  The seizures normally occur at night and will wake Plaintiff.  (TR 425-26). Plaintiff describes the seizure as a vibration that "zips" up and down her leg from her hip to her toes and lasts three or four minutes, then her leg and body grow fatigued and her leg goes limp.  (TR 425).  She testified that when she wakes in the morning she is fatigued and has to rest for the entire morning.  (TR 425-26).

Plaintiff takes Topamax to control seizures and she keeps a log of the seizures; when she has an increase in seizures, her doctors increase her medication dosage.  (TR 424-25, 427).  Plaintiff testified that the Topamax controls the seizures but it makes her tired.  (TR 424-25, 427).  She also takes Lisinopril for blood pressure.  (TR 336, 423).  Plaintiff also has difficulty with her right ankle and drop foot, for which she wears a night splint.  (TR 428). She testified that her foot can lock up on her at any time and her drop foot and toes are worse when her leg is fatigued.  (TR 127, 139, 428,

2

447).

Plaintiff lives in a house with her husband, two school-age children and a dog. (TR 417). She now cooks only basic food for her family, such as reheating ready-made food and using mixes, instead of making homemade foods and recipes which take more time, standing, concentration and follow-through. (TR 139, 433-34). Plaintiff does some laundry and her husband and children do the heavy laundry. (TR 138,434). She vacuums, but only if someone is home, in case she falls. (TR 442). She does not go down her basement stairs unless her husband walks with her. (TR 442). Plaintiff can perform her personal hygiene tasks by herself. (TR 437). She testified that she has her driver's license and it is not restricted but she only drives a maximum fifteen mile radius. (TR 420).

Plaintiff reports constant pain in her foot and ankle. (TR 436-37). She tries not to take pain medication because she says it will "eat" her stomach. (TR 437). Plaintiff testified that she exercises to keep her foot, leg and ankle functional. (TR 435). Plaintiff stated that she only walks on smooth surfaces and she cannot balance herself on uneven surfaces. (TR 433, 444). She testified that her balance is off once or twice a week and she stays home. (TR 450). Plaintiff testifies that she cannot walk and carry an item and must hang onto a shopping cart when she shops. (TR 441). She can shop for approximately twenty minutes and takes breaks to sit down while she shops. (TR 435, 440). Plaintiff testified that she uses a cane when she go outs during the winter. (TR 439-40).

Plaintiff sometimes attends church but has difficulty sitting for long periods because her leg gets numb and tingly. (TR 438). Plaintiff can sit for approximately half-hour before she has to stand and walk around and can stand for about eight minutes before she has to sit. (TR 439). Plaintiff testified that she elevates her right leg about six times per day for an hour each time. (TR 424, 445). Plaintiff testified that she can lift a gallon of milk and her dog, who weighs thirteen

3

pounds.  (TR 440).

Plaintiff testified that she cannot concentrate as well since the surgery and has difficulty with word recall and communicating her thoughts.  (TR 431).  In September 2004 Plaintiff reported that she has trouble remembering things since her surgery and she uses a timer to remind her to take her medication.  (TR 139, 143).  Plaintiff testified that she reads very little since the surgery, because her "comprehension's a bit off."  (TR 141, 418).  She is able to complete basic addition and subtraction and write short notes to her children's teachers, but does not help her children with their homework.  (TR 418).   She does not have the tolerance for a "big task load," for example, the increased activity in her home when her children come home from school with their  homework.  (TR 431).  Plaintiff testified that she attempted to volunteer at her child's elementary school but she only stayed about one hour due to fatigue and intolerance of the children's noise level.  (TR 423)

**B.     Medical Evidence and Medical Expert Testimony**

On December 26, 2003 Plaintiff suffered her first seizure.  (TR 145).  Plaintiff reported to the emergency room and a CT scan revealed a mass in the parietal area, which was diagnosed as a left parietal meningioma and frontal arteriovenous malformation (AVM).  (TR 180, 183-85).  On December 27, 2003 Plaintiff complained of headaches and difficulty with balance and swallowing. On December 30, 2003, Vittorio Morreale, M.D., surgeon, with Mouhamad F. Rihawi, M.D., performed a left parietal craniotomy, resection of meningioma, and microdissection with operating microscope.  (TR 180).  Plaintiff remained hospitalized for twenty-one days during which she underwent inpatient rehabilitation and made satisfactory progress with all rehabilitation therapies. (TR 219, 429).  Plaintiff received outpatient physical, occupational and speech therapies following discharge.  (TR 220).

4

On January 18, 2004 Plaintiff reported pain in her right great toe with wearing her shoe and ambulation. (TR 226). William Michael Bennett, DPM, removed a portion of the medial border of the right hallux and recommended that Plaintiff have a permanent nail evulsion of the border with removal of the matrix. (TR 227). On January 24, 2004 Plaintiff had swelling of the right ankle and underwent x-rays which showed "significant degenerative calcification at the insertion of the plantar tendon into the calcaneus." (TR 229). On January 26, 2004 Plaintiff was advised to wear an aircast splint for support of the right ankle until an orthotic was completed for her. (TR 230).

An April 4, 2004 MRI revealed internal resolution of the left parietal meningioma and no interval significant change in the AVM. (TR 239). On April 14, 2004 Vittorio M. Morreale, M.D., reported that Plaintiff was making a "very good functional recovery." (TR 238). Plaintiff was able to elevate her right leg and sustain her weight on her toes but she complained of "feeling sensations going down the right leg." (TR 238). Dr. Morreale noted that she would need a resection of the AVM. (TR 238).

Plaintiff treated with David S. Weingarden, M.D. & Associates, P.C., for physical medicine and rehabilitation from March 2, 2004 through February 27, 2007. (TR 272-82, 355-403). On March 2, 2004 Katherine H. Karo, D.O., recommended Plaintiff use an ankle sleeve and arch support for the right foot and she prescribed physical, occupational and speech therapies. (TR 282). Plaintiff presented at the examination using a cane and Dr. Karo noted that Plaintiff was able to ambulate freely without it. (TR 281). Plaintiff reported that she did not need to use a cane at home. (TR 281). Dr. Karo prescribed Mobic as an anti-inflammatory. (TR 281-82). On April 6, 2004 Plaintiff presented at the examination without the use of a cane. (TR 279). Plaintiff reported that she only took the Mobic for three days, then discontinued it. (TR 279). Dr. Karo noted that Plaintiff

5

had no new injuries or accidents and her medications included Dilantin, Pepcid and a hypertensive medication.  (TR 279).  On August 17, 2004 Dr. Karo noted that Plaintiff denied having any falls since the last examination and Plaintiff reported an increase in strength, balance and safety.  (TR 275).  On October 8, 2004 Jagmohan Sharma, M.D., F.R.C.S., noted that Plaintiff continued to have focal seizures affecting the right foot with the most recent seizure on October 5, 2004.  (TR 272).  Dr. Sharma noted that Plaintiff was independent with basic activities of daily living but was "unable to walk long distances without having to stop."  (TR 272).

Plaintiff treated with Martha Frankowski, M.D., from May 6, 2004 through March 16, 2005.  (TR 283-300, 324-338).  On May 6, 2004 Dr. Frankowski noted that Plaintiff's present, recent and remote memory were intact with normal attention span and concentration.  (TR 297).  Language function was normal and Plaintiff had "normal comprehension and cognition."  (TR 298).  Dr. Frankowski noted a slightly wide based gait and station with right foot drop of 3-4/5 and mild weakness in the right lower extremity.  (TR 298).  Plaintiff was noted as "not tolerating Dilantin," and was having hirsutism, gingival bleeding and fatigue. (TR 298).  The doctor noted that Plaintiff has seizures and could not exclude the seizures being related to the AVM.  (TR 298).  On June 30, 2004 the doctor again noted that Plaintiff's mental status examination was normal.  (TR 293).  Plaintiff reported having seizures since the prior examination and her Lamictal dosage was increased.  (TR 292).  Dr. Frankowski noted that the seizures were sensory seizures and Plaintiff reported abnormal sensations running up and down her right leg with a throbbing sensation.  (TR 292).

On October 13, 2004 Dr. Frankowski completed a form questionnaire on Plaintiff and noted that Plaintiff had no side effects on her current medications, she could ambulate without assistance,

used a cane as needed, had no disability in her upper extremities including ability to write, tie her shoes, drink from a cup, pick up a coin and push or pull, but had decreased ability to function with her lower right extremity. (TR 283-86). At the October 13, 2004 examination the doctor noted that Plaintiff's seizure episodes were becoming less frequent with her adjusted doses of Trileptal. (TR 335). Plaintiff had a partial seizure on October 5, 2004 and her last seizure was on September 3, 2004. (TR 335). The doctor noted that Plaintiff's right foot drop was "slowly improving." (TR 335). Plaintiff's mental status examination was normal. (TR 336). Dr. Frankowski noted that Plaintiff had no functional impairment from a neurologic standpoint with regard to the seizures. (TR 337). In October 2004 Murali Guthikonda, M.D., F.A.C.S., noted that Plaintiff complained of increasing right leg weakness and that the seizures appeared to be under control with the Trileptal medication. (TR 309).

On January 20, 2005 a state agency medical consultant and physician completed a Physical Residual Capacity Assessment and concluded that Plaintiff has the ability to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk two hours in an eight-hour workday, sit about six hours in an eight-hour workday and is limited in pushing and pulling with the lower extremities and limited in the ability to operate foot pedals with the right lower extremity. (TR 161). Plaintiff must never climb ladders, rope or scaffolding and only occasionally climb ramps or stairs. (TR 162). Plaintiff is limited to occasional balancing, stooping, kneeling, crouching, or crawling. (TR 162). The consultant noted that Plaintiff's mental status was "normal with no evidence of encephalopathy or aphasia." (TR 162).

On March 16, 2005 Plaintiff reported that the seizures were occurring occasionally only at night while she was in bed. (TR 324). Plaintiff complained of generalized fatigue and decreased

7

energy since the surgery. (TR 324). Plaintiff stated that she believed that fatigue was from the medication, however, the doctor noted that the fatigue was occurring in the evenings, rather than after taking the medication. (TR 324). Dr. Frankowski again noted Plaintiff's right foot drop of 4/5, yet concluded that Plaintiff has no functional impairment. (TR 326). The doctor recommended that Plaintiff add a multivitamin to her regimen and increase her activity level to address her fatigue and reduced endurance and further recommended that Plaintiff speak with her primary physician about a screening for depression, although Plaintiff denied any symptomatology for depression other than the fatigue. (TR 327).

On October 10, 2005 Plaintiff underwent x-rays of the right ankle and foot following complaints of pain. (TR 388). The x-rays revealed minimal hypertrophic changes at the first metatarsophalangeal joint and the dorsal aspects of the intertarsal joints, a large plantar calcaneal spur and an intact ankle mortise. (TR 388). Dr. Sharma diagnosed Plaintiff with a "planovalgus deformity causing impaction of the fibular head to the tarsal bones." (TR 390).

In March 2006 Plaintiff reported to Dr. Sharma that she was on a cruise when her right ankle gave out and she fell. (TR 373). Plaintiff reported that she has had no further falls. (TR 373). Dr. Sharma's March 2007 notes state that Plaintiff has a history of anxiety and panic attacks. (TR 373). Plaintiff continued to complain intermittent pain in the right ankle, including in April, August and December 2006 and February 2007. (TR 355, 359, 367, 370). In April 2006 Dr. Sharma prescribed a resting splint for Plaintiff to wear on her ankle at night. (TR 371, 372). Plaintiff was taking Motrin as needed. (TR 359, 367). Plaintiff denied having any falls. (TR 355, 367). In February 2007 Plaintiff continued to report seizures and was taking Topamax. (TR 355). Dr. Sharma noted that Plaintiff was independent in activities of daily living. (TR 355, 367, 371).

8

In August 2006 Julie Burnham, D.O., noted that Plaintiff had a history of intolerance to Dilantin, Keppra, Lamictal and Trileptal. (TR 342). She also noted that Plaintiff reported increased forgetfulness and that Plaintiff needed to use timers and notes, as she had in the past. (TR 343). On August 17, 2006 and February 20, 2007 Dr. Burnham noted that Plaintiff was able to tell her "complete history in a temporally organized fashion without evidence of cognitive decline. Concentration, general fund of knowledge and remote and recent memory are normal." (TR 340, 343). On both dates, however, Dr. Burnham also noted that she suspected "mild cognitive impairment post craniotomy," which did not appear to have been exacerbated by the Topamax. (TR 341).

In March 2007 Plaintiff complained of fatigue and weight loss and it was noted that she had a history of hyperthyroidism. (TR 348). Jan Mourelatos, M.D., radiologist, reported multiple nodules within the thyroid gland, greater on the right side than the left. (TR 348). On May 21, 2007 Mohammad Ghaffarloo, M.D., examined Plaintiff regarding the toxic nodules in her right thyroid. (TR 310, 318-19). He noted that he talked to her husband because she was having a "hard time" understanding and "also poor memory." (TR 310). On May 29, 2007 Dr. Ghaffarloo noted that Plaintiff was not going to undergo I131 therapy for the nodules, but elected to have surgery to remove the toxic nodules. (TR 323).

During the relevant time period, the AVM was also being monitored by Plaintiff's physicians. On November 30, 2004 Murali Guthikonda, M.D., noted that an angiogram revealed that Plaintiff did not have an AVM, but instead, had dilated vessels and what appeared to be a severely stenotic anterior cerebral artery. (TR 307). He concluded that Plaintiff was not a candidate for gamma knife radiation. (TR 307). On January 26, 2005 Plaintiff underwent brain spect imaging.

9

(TR 303). After reviewing the spect imaging, Dr. Guthikonda concluded that Plaintiff has a congenital abnormal A2 segment continuing onto the callosomarginal branch with no evidence of any vascular malformation or early venous drainage. (TR 302). A March 2006 MRI revealed no real interval change in the postoperative site and no change in the AVM since the April 2004 MRI. (TR 353). A March 2007 MRI again showed "no appreciable change" in the AVM of the right parietal region. (TR 349).

Plaintiff also complains of degenerative disc disease. A preliminary report from Plaintiff's December 2003 hospitalization notes that Plaintiff has "[d]egenerative disc disease of the lumbar spine causing chronic back pain." (TR 212).

## C.    Vocational Expert Testimony

The vocational expert (VE) testified that Plaintiff's past work as a photo framer was semi-skilled and light to medium in exertion and her past work as a paraprofessional was unskilled and light in exertion. (TR 100, 456). The ALJ asked the VE to consider an individual of the Plaintiff's age, education and work experience, limited to lifting ten to fifteen pounds occasionally and ten pounds more frequently, no use of right foot controls, needing primarily seated work and with ability to change position as needed and elevate one foot to footstool height, no more than occasional postural activities, no climbing of ropes, ladders, scaffolding, needing to avoid stairs and avoid close proximity to unprotected heights and dangerous machinery due to balance issues and medication side effects, and limited to simple, repetitive tasks, whether from side effects due to medication or reasoning and mental difficulties resulting from the surgery. (TR 456-57). The VE testified that such an individual could not perform Plaintiff's past work. (TR 457). The VE testified that there are jobs that such an individual could perform which would allow for foot stool level seated work,

10

including surveillance monitor, information clerk and cashier II and the jobs total 4,500 in Southeast Michigan and 8,000 statewide. (TR 457).

The VE testified that if Plaintiff's testimony were fully credible and her limitations were as she described, there would be no work which she could perform in the local or national economy. (TR 457). The VE testified that the postural issues were the most preclusive factor and the level of elevation to her waist or above waist level would be preclusive. (TR 458). The VE stated that he did not believe the seizures would preclude normal work hours. (TR 458). The ALJ asked whether the VE's testimony was consistent with the Dictionary of Occupational Titles (DOT) and the Selective Characteristics of Occupations and the VE agreed that it was. (TR 457).

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION:

The ALJ found that although Plaintiff was insured for benefits through September 30, 2005, had not engaged in substantial gainful activity since the alleged onset date of December 26, 2003, and suffered from history of a benign meningioma status post craniotomy, arteriovenous malformation (AVM), sensory seizures, right foot drop and obesity, all severe impairments, she did not have an impairment or combination of impairments that met or equaled the Listing of Impairments. (TR 57-59). Additionally, the ALJ found that Plaintiff's statements about her limitations were not entirely credible. (TR 60-61). The ALJ found that Plaintiff was not capable of performing her past relevant work, however, Plaintiff retained the residual functional capacity to perform a limited range of unskilled sedentary work and there are a significant number of jobs in the economy which she could perform. (TR 62). Therefore, she was not suffering from a disability under the Social Security Act. (TR 63).

11

**V.**     **LAW AND ANALYSIS:**

**A.     Standard of Review**

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

12

**B.      Framework For Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1)      she was not presently engaged in substantial gainful employment; and

(2)      she suffered from a severe impairment; and

(3)      the impairment met or was medically equal to a "listed impairment;" or

(4)      she did not have the residual functional capacity to perform her relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her residual functional capacity ("RFC"), age, education and past work experience to determine if she could perform other work.  If she could not, she would be deemed disabled.  *See* 20 C.F.R. § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualification to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

Plaintiff argues that the ALJ did not give appropriate weight to the objective medical evidence and the opinion of Plaintiff's treating physician, failed to consider all of Plaintiff's medical conditions, failed to include all of Plaintiff's impairments in the RFC and hypothetical question to the VE and failed to comply with SSR 00-4p.

13

C.     **Analysis**

1.     *Whether Plaintiff Properly Considered The Treating Physician's Opinion And Evidence*

Plaintiff argues that the ALJ failed to consider Dr. Burnham's opinion which was provided

to the ALJ after the hearing.  Plaintiff cites transcript pages 409-410 which contains a March 13,

2008 letter from Dr. Burnham in which the doctor states that she fully supports Plaintiff's "seeking

of medical disability and inability to work in any capacity given both her physical and cognitive

limitations."  (TR 409-10).   This letter post-dates the ALJ's decision and is new evidence.

Regarding the issue of new evidence, the "court is confined to review evidence that was available

to the Secretary, and to determine whether the decision of the Secretary is supported by substantial

evidence."  *Wyatt v. Sec'y of Health and Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992) (*citing

Richardson*, 402 U.S. at 401.  The court may still remand the case to the ALJ to consider this

additional evidence but only upon a showing that the evidence is new and material and that there

is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42

U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  This is referred to as a

"sentence six remand" under 42 U.S.C. § 405(g).  *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed.

Appx. 542, 549 (6th Cir. 2002).  The party seeking remand has the burden of showing that it is

warranted.  *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).

"A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire

and present the evidence for inclusion in the hearing before the ALJ."  *Foster*, 279 F.3d at 357

(*citing Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)).  "In order for

the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a

reasonable probability that the Secretary would have reached a different disposition of the disability

14

claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711 (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)). "Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt*, 974 F.2d at 685 (*citing Sizemore*, 865 F.2d at 712).

As an initial matter, the ALJ did not err in failing to adopt Dr. Burnham's opinion that Plaintiff cannot work in any capacity. Dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e). The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Apfel*, 14 Fed. Appx. 525, 536 (6th Cir. 2001).

Plaintiff has not otherwise shown that there is a reasonable probability that the ALJ would have reached a different disposition of her claim if the ALJ had Dr. Burnham's letter. The letter does not contain new evidence relating to the period in question and Plaintiff has provided no reason for failing to provide this information prior to the ALJ's decision. *See* 20 C.F.R. § 404.970(b)*; Oliver v. Sec'y of Health and Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986). The Court should not remand this matter for consideration of Dr. Burnham's March 13, 2008 opinion.

The transcript also contains medical records which were submitted to the Appeals Council but were not before the ALJ. (TR 10-37). Plaintiff did not ask that this matter be remanded for consideration of the new records which appear at pages 10-37 of the transcript, and Plaintiff did not refer to them in her analysis as she did Dr. Burnham's letter. The Court has, however, reviewed these documents to determine whether they warrant remand for consideration. The new documents refer to conditions and impairments already considered in the record before the ALJ, some of the documents are duplicative, for example Dr. Frankowski's examination notes from October 13, 2004,

and Plaintiff gave no reason for submitting them after the ALJ's decision.  The Court should not remand this matter for consideration of these documents.  (TR 10-37).

Plaintiff also argues that the ALJ did not give proper weight to the treating physician's opinions.  It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference.  Under 20 C.F.R. § 404.1527(d)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.  The Sixth Circuit has stated that "[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once."  *Walters*, 127 F.3d at 529-30.

If an ALJ rejects a treating physician's opinion, she must "give good reasons" for doing so in her written opinion.  *See* 20 C.F.R. § 404.1527(d)(2); *see also* SSR 96-5p and 96-2p. Furthermore, the Sixth Circuit has noted that the ALJ must provide good reasons for the weight given a treating source's opinion.  *Wilson v. Comm'r of Soc. Sec'y*, 378 F.3d 541, 544 (6th Cir. 2004).  The reasons must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (*citing* SSR 96-2p, 1996 WL 374188, at *5).

Plaintiff points out that Dr. Burnham prescribed Topamax and indicated that it has a "side effect of cognitive impairment."  (TR 347).  Plaintiff also argues that there are "no records that indicate that there is not a diminishment in cognitive impairment . . . ."  (Docket no. 9, pg. 11). Taken in context, it is clear that Dr. Burnham's comment refers to Plaintiff's subjective complaints. Dr. Burnham's full note on this issue states: "Complaints of memory difficulties have developed

16

since her craniotomy.  Certainly the Topamax does have a side effect of cognitive impairment but the patient denies any particular correlation between that."   (TR 347).  This statement does not establish the existence of a cognitive impairment due to Topamax.  Furthermore, the ALJ's decision refers to Dr. Burnham's August 17, 2006 suspicion that Plaintiff had mild cognitive impairments" for which Dr. Burnham "considered the role that Topamax has also played in this," and points out that a series of mental status examinations note that Plaintiff was cognitively stable.  (TR 59, 344).  As set forth in the medical evidence, above, the record contains records from multiple treatment providers noting that Plaintiff's mental status was stable or normal or that her remote and recent memory were normal.  (TR 297, 298, 336, 326, 339, 340, 343, 346).  The ALJ addressed the mental limitations in the RFC by noting Plaintiff's difficulty with detailed instructions, maintaining attention and concentration and subsequently limiting Plaintiff to simple repetitive tasks.  (TR 60).  These limitations as set forth by the ALJ are more restrictive than any limitations found in the record and Plaintiff does not cite contradictory evidence.  The ALJ's findings with respect to Plaintiff's mental impairments and the effects of the impairments are supported by substantial evidence.

Plaintiff also argues states that "[m]ultiple falls were noted with post-concussive symptoms with dizziness and lightheadedness" and cites page 345 of the transcript.  (Docket no. 9, pg. 10).  This statement is not a treating physician's opinion but is a notation of Plaintiff's subjective report of a fall.  Nonetheless, the Court will address it.  The record simply does not support Plaintiff's misleading allegation that "multiple falls were noted with post-concussive symptoms."  The record cited includes Plaintiff's subjective report of a single fall, which occurred during a cruise.  (TR 345).  Plaintiff reported that lightheadedness and dizziness followed the fall and Plaintiff did not seek medical attention for the fall until after the vacation.  The symptoms resolved and a CT scan was

17

unremarkable.  (TR 345).  As the ALJ correctly points out, the record is replete with treatment

provider notations spanning the time frame at issue, in which  Plaintiff denied any other falls.  (TR

275, 279, 346, 355, 367, 373).

Finally, Plaintiff alleges that the records indicate that Plaintiff has an AVM malfunction of

the brain, severe degenerative changes in the lumbar spine and "paralysis with lack of function  in

the left lower extremity."  (Docket no. 9, pg. 11).  Plaintiff also argues that the ALJ failed to

consider Plaintiff's "out-of control hypertension," morbid obesity, and degenerative disc disease of

the lumbar spine causing chronic back pain.  (Docket no. 9, pg. 12).  Although the ALJ is not

required to discuss every piece of evidence in the record, an ALJ should discuss evidence that, if

believed, could lead to a finding of disability.  The ALJ is required to consider the applicant's

medical situation as a whole.  *See Barrett v. Barnhart*, 355 F.3d 1065,  1068 (7th Cir. 2004).  The

claimant has the burden of proving that she is disabled within the meaning of the Social Security

Act.  *Tyra v. Sec'y of Health and Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990).  Proof of an

impairment alone is insufficient and Plaintiff must establish that the impairment precludes any

substantial gainful activity.  *Houston v. Sec'y of Heatlth and Human Servs*., 736 F.2d 365, 366-67

(6th Cir. 1984).

Plaintiff has failed to cite any record evidence of these impairments or their disabling effects

which the ALJ failed to consider.  Plaintiff cites to no evidence which required limitations greater

than those included in the ALJ's RFC.  The diagnosis of degenerative disc disease of the lumbar

spine appears in the records from Plaintiff's December to January 2003-04 hospital stay.  (TR 212,

223).   Chest x-rays dated December 26, 2003 reveal that the "thoracic spine shows mild

degeneration."  (TR 213).  The record contains no further complaints related to this condition or

18

treatment for this condition.  The ALJ properly considered evidence of Plaintiff's AVM, which physicians later decided not to treat with gamma-knife radiation, and the ALJ considered Plaintiff's impairment of her right leg and associated limitations.  (TR 59).  The record does not contain evidence of paralysis related to the left leg.  Dr. Frankowski's records from October 13, 2004 show that Plaintiff had a "slight decrease in left lower extremity" with sensory examination.  (TR 336-37).  Dr. Frankowski concluded that Plaintiff has "no functional impairment."  (TR 337).  Plaintiff does not cite any evidence which supports her allegation of left leg paralysis.

The ALJ considered Plaintiff's obesity and found that it was a severe condition.  There are simply no limitations in the record related to this condition which are not encompassed in the ALJ's RFC.  With respect to Plaintiff's allegations of out-of-control hypertension, Plaintiff testified that she takes medication for her blood pressure.  (TR 423).  The medical record contains no objective medical basis for finding that this condition is severe or uncontrolled or that Plaintiff has related limitations.  Other than Plaintiff's testimony, the record contains no evidence of symptoms or examination findings that demonstrate that Plaintiff has severe impairments beyond those found by the ALJ.  The ALJ's findings regarding Plaintiff's severe impairments and their related effects are supported by substantial evidence.

**2.      _Whether The ALJ Properly Relied On The VE's Testimony And Met Her Burden At Step Five Of The Analysis_**

Plaintiff argues that the VE's testimony did not adequately address Plaintiff's cognitive impairment.  Plaintiff again points to Dr. Burnham's note that Topamax has "a side effect of cognitive impairment," and that "[m]ultiple falls were noted with post-concussive symptoms with dizziness and lightheadedness."  (Docket no. 9, pg. 12).  The Court discussed Dr. Burham's note regarding Topamax side-effects, above and finds that there are no limiting effects related to this

19

comment or Dr. Burnham's other opinions of record which was not considered in the ALJ's decision.  With respect to multiple falls with post-concussive symptoms, this allegation is simply not supported by the record, as set forth above.

The ALJ properly determined Plaintiff's RFC based on all of the medical evidence of record and found that she could perform:

> [W]ork lifting 10 to 15 pounds occasionally and 10 pounds frequently; with no right foot controls; which is primarily seated work having the ability to change positions as needed and elevate right leg to footstool level; no ladders, ropes or stairs with other postural activities being performed no more than occasionally; avoiding close proximity to unprotected heights and dangerous machinery due to balance issues and medication side effects; difficulty with detailed instructions and maintaining attention and concentration for extended periods limit the claimant to simple repetitive tasks. (TR 60).

The ALJ's RFC is consistent with the exertional limitations set forth in the January 2005 Physical Residual Functional Capacity Assessment. (TR 160-67).  As set forth above, the ALJ incorporated Plaintiff's mental limitations she found credible and supported by the record.

The hypothetical question to the VE incorporated all of the limitations which the ALJ included in her RFC.  (TR 456-58).  VE testified that Plaintiff could not perform her prior work, but could perform other work in the economy, which included surveillance monitor, information clerk and cashier II with approximately 4,500 jobs existing in Southeast Michigan and 8,000 jobs statewide.  (TR 457).  Plaintiff argues that the VE testified that Plaintiff did not have transferable skills due to cognitive difficulties.  The VE's testimony on this issue does not contradict the ALJ's RFC or hypothetical question, which did not require transferability of skills.

Plaintiff also argues that when the ALJ asked the VE to assume that Plaintiff's testimony is fully credible, the VE testified that there would be no jobs available in the local or national economy.  Again, the ALJ did not err in failing to adopt this testimony.  In a hypothetical question

20

posed to the VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record. *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993). The ALJ found that Plaintiff's allegations were not wholly credible[1]. (TR 59-61).

Finally, Plaintiff argues that the ALJ did not meet her burden at step five to show that there is a significant number of jobs Plaintiff can perform. Plaintiff argues that the DOT classification for Cashier II, section 211.462 requires the ability to frequently stand and this represents a violation of SSR 00-4p because it is an apparent conflict between the DOT and the jobs which the VE testified that Plaintiff could perform. SSR 00-4p provides that the adjudicator must resolve a conflict

---

[1] Plaintiff did not challenge the ALJ's credibility findings in her brief, however, it is worth noting that the ALJ's credibility determination was supported by substantial evidence. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters,* 127 F.3d at 531. Credibility assessments are not insulated from judicial review. Despite deference due, such a determination must nevertheless be supported by substantial evidence. *Id.* An ALJ's credibility determination must contain "specific reasons . . . supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p. "It is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" *Id.*

The ALJ in her decision noted those factors she considered in making her credibility determination regarding Plaintiff's allegations of significant fatigue, gait difficulties and memory difficulties. *See* 20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen,* 35 F.3d 1027, 1039-40 (6th Cir. 1994). The ALJ pointed out that treatment notes list only mild findings or impairments and mental status examinations show Plaintiff to be stable. (TR 59). The record does not contain physician restrictions related to Plaintiff's foot and ankle and her allegation that she needs to elevate her foot at least six times per day. (TR 60,). The ALJ also pointed out that Plaintiff's pain complaints in the record are intermittent and her use of Motrin for pain is infrequent, two to three times per week. (TR 61, 359, 367). The ALJ further noted Plaintiff's involvement in household chores, driving short distances and her ability to walk for 30 to 40 minutes on a good day. (TR 61, 134, 370, 434, 442). She noted that Plaintiff's seizures as recorded in the records do not appear to occur as frequently as Plaintiff testified at the hearing. (TR 61). The ALJ referenced the seizure activity questionnaire completed on October 13, 2004. (TR 61, 145-46). The ALJ's credibility findings are supported by substantial evidence and thoroughly explained.

between the DOT and the VE "before relying on the VE . . . evidence."

The ALJ determined that Plaintiff has the RFC to perform a limited range of sedentary work. Due to Plaintiff's non-exertional limitations, the ALJ properly referenced the regulations, Pt. 404, Subpt. P, App. 2, Rule 201.21, as a framework which would direct a conclusion of "not disabled" and further relied on the VE's testimony to determine what effect Plaintiff's non-exertional limitations would have on the number of jobs available in the economy. (TR 62). The ALJ asked the VE whether his testimony was consistent with the Dictionary of Occupational Titles (DOT) and the Selective Characteristics of Occupations. (TR 457). The VE stated that his testimony was consistent. The ALJ satisfied his obligation under SSR 00-4p to affirmatively inquire as to whether there are any conflicts between the DOT and the VE's testimony.

The VE then testified on cross-examination with respect to the cashier job that Plaintiff would "be for instance working in closed parking lot booths where you're taking a ticket, running the time clock and charging the proper amount and making change." (TR 459). The VE further clarified that the need to change positions while working is the ability to change from seated to standing at will and "the person wouldn't change positions and leave the work post and then come back whenever they want. No, they're expected to be at the work site." (TR 460). Plaintiff's counsel asked, "So, about two hours at a time to, seated to standing, but not able to walk away from the work station." (TR 461). The VE responded, "On average, yeah." (TR 461).

To the extent Plaintiff argues that the DOT classification for Cashier II, section 211.462 requires "the ability to frequently stand," the Court does not find this requirement within the classification cited by Plaintiff and Plaintiff has not shown a conflict between changing position between sitting at standing at will, and Plaintiff's allegation that this job requires "the ability to

22

frequently stand." (Docket no. 9, pg. 13)*; see generally Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601 (6th Cir. 2009). There is no basis for finding a conflict between the VE's testimony and the DOT.

The ALJ's RFC is supported by substantial evidence, the ALJ's hypothetical question to the VE contained Plaintiff's limitations and the ALJ properly relied on the VE's testimony to find that there are jobs that exist in significant numbers which Plaintiff can perform. The ALJ's finding at step five is supported by substantial evidence.

## VI.   CONCLUSION

In sum, the Commissioner's decision to deny benefits is supported by substantial evidence and there is insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment (docket no. 9) should be denied, that of Defendant (docket no. 16) granted and the instant Complaint dismissed.

### REVIEW OF REPORT AND RECOMMENDATION:

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of*

23

*the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: April 29, 2009                         s/ Mona K. Majzoub
                                              MONA K. MAJZOUB
                                              UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: April 29, 2009                         s/ Lisa C. Bartlett
                                              Courtroom Deputy

24